747 F.Supp. 536 (1990)
Derrick D. MERRITT-BEY, Plaintiff,
v.
Lt. Lonnie SALTS, et al., Defendants.
No. 89-2360-C-5.
United States District Court, E.D. Missouri, E.D.
October 5, 1990.
Derrick D. Merritt Bey, Potosi, Mo., pro se.
John F. Cooney, Sp. Asst. Atty. Gen., Evans & Dixon, St. Louis, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This cause is before the Court on defendants' motion for summary judgment. Plaintiff, an inmate of the Missouri Department of Corrections and Human Resources, brings this action under 42 U.S.C. § 1983 claiming that defendants, staff members at Potosi Correctional Center ("PCC"), violated his Fourth Amendment rights.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment *537 with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. Once the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.
On August 10, 1989 at about 4:15 p.m., plaintiff made insulting statements to Correctional Officer Charles Pritchett. At the time plaintiff made the remarks, Officer Pritchett was frisking him prior to plaintiff beginning work at the institution's food service. As a result, plaintiff was charged with a violation of Inmate Rule No. 21 (Insulting Behavior). About 15 minutes later, plaintiff was charged with violation of Inmate Rule No. 24 (Contraband) for possession of a mechanical pencil. As a result of these conduct violations, plaintiff was physically restrained and taken to the Special Management Housing Unit, Housing Unit No. 2, where he was placed in temporary administrative segregation.
Standard Operating Procedure 20-1.3 governs searches of inmates at PCC. It defines a strip search in Section II-C as including "the visual inspection of the anal, vaginal and genital areas, but does not include the touching, opening or probing of these areas by the person conducting the search." Section III-B-2 provides that strip searches will be conducted "when is believed to be in the best interest of the security of the institution."
Standard Operating Procedure 20-1.3 also governs the policy and procedure when an inmate is placed in temporary administrative segregation. Under this procedure, an inmate may be placed in temporary administrative segregation in the Special Management Unit "when an inmate is an immediate security risk" or "when the inmate is violent, struggling and creating sufficient disturbance to indicate that he is not in control of himself."
Pursuant to Standard Operating Procedure 20-1.3, correctional officers removed plaintiff's restraints and strip-searched him before placing him in administrative segregation. Correctional Officer Les Davis conducted the search of plaintiff while defendant Correctional Officer Linda Edgar stood guard at the inside of the cell door. Plaintiff alleges that Lt. Lonnie Salts, Sgt. Phillip Nixon, and Correctional Officer Kohut also were present during the search. Only Salts, Nixon and Edgar are defendants in this action. Plaintiff alleges that during the strip search one of the correctional officers said, "So, it's not true what they say about all blacks anyway." Defendants *538 deny that this or any other harassing remark was made.
Plaintiff claims defendants violated his rights: because 1) no institutional policy provided that an inmate be strip searched prior to placement in temporary administrative segregation; 2) a female correctional officer was present during the strip search of plaintiff; and 3) plaintiff was allegedly subjected to a racial and sexual remark. Viewing the facts in the light most favorable to plaintiff, this Court cannot find that defendant's rights were violated.
The Supreme Court has directed that in addressing claims that prison conditions or policies violated the Constitution,
courts must heed [the] warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."
Bell v. Wolfish, 441 U.S. 520, 540-41 n. 23, 99 S.Ct. 1861, 1874-75 n. 23, 60 L.Ed.2d 447 (1979) (quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)).
The Fourth Amendment prohibits only those searches and seizures that are unreasonable. To prevail on his claim that he was subjected to a strip search that violated his Fourth Amendment rights, plaintiff must show that the search was "unreasonable" in the prison context. The Supreme Court set forth a balancing test for determining the reasonableness of a search:
The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); Goff v. Nix, 803 F.2d 358, 363 (8th Cir.1986), cert. denied, 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987).
In Wolfish, the Supreme Court upheld a prison strip search policy that required all inmates to submit to a visual body cavity (VBC) inspection after every contact visit with someone from outside the institution. 441 U.S. at 559, 99 S.Ct. at 1884-85. The Eighth Circuit in Goff upheld VBC searches by prison officials as a condition of any movement outside inmates' living unit or before being taken outside the prison. 803 F.2d at 359.
Any limited right to bodily privacy that a prisoner may have must yield to the penal institution's need to maintain security when the impingement of privacy is "reasonably related to legitimate penological interest." See Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987).
In this case, plaintiff committed two conduct violations within a span of about 15 minutes. The first was a verbal assault of a correctional officer during a routine patdown search. The second involved contraband. Accordingly, the correctional officials determined that a strip search of plaintiff before he was placed in administrative segregation was in the "best interest of the security of the institution" according to Standard Operating Procedure III-B-2.
The Court finds that the strip search here was reasonably related to prison objectives set out in Standard Operating Procedure 20-3.1: prevention of the introduction of weapons or other contraband into the institution; discovery and suppression of trafficking between employees and inmates; detection of manufacture of weapons and escape device; to enforce rules; discouragement of theft of institutional property; and, stopping any waste or destruction of state property. Prison officials using their judgment determined that the strip search of plaintiff was necessary to maintain security. The Court will not interfere with that judgment.
*539 Further, plaintiff's constitutional rights were not violated because a female prison guard was present during the search. It is undisputed that defendant Linda Edgar did not conduct the strip search of plaintiff. As the Eighth Circuit has not addressed the issue of female correctional officers viewing unclothed male inmates, this Court is persuaded by and adopts the position of the Ninth Circuit.
In Michenfelder v. Sumner, 860 F.2d 328 (9th Cir.1988), the Ninth Circuit specifically held that the fact that female correctional officers might be able to view strip searches of male prisoners did not render search policy violative of prisoners' privacy rights. The Court recognized that there were legitimate penological interests in both "providing equal employment opportunities and the security interests in deploying available staff efficiently." Michenfelder, 860 F.2d at 334. The Ninth Circuit in Grummett v. Rushen stated that "[t]o restrict the female guards from positions which involve occasional viewing of inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities for female guards." 779 F.2d 491, 496 (9th Cir.1985).
Thus, this Court finds the fact that a female correctional officer was present during the strip search did not violate plaintiff's constitutional rights.
Last, the Court finds no constitutional violation even assuming a guard made the remark as plaintiff alleges. The Court acknowledges that verbal harassment bears no relationship to the prison's legitimate security needs. See Goff v. Nix, 803 F.2d at 365, n. 9. However, plaintiff merely alleges one single, isolated remark, which on its face is not harassing. A single, isolated remark does not comprise a constitutional violation.
For the foregoing reasons, the Court grants defendants' motion for summary judgment.