UNITED STATES of America, Appellee,

v.

Hubert MICHAUD,
Defendant, Appellant.

No. 90–1877.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1991.

Decided Feb. 13, 1991.

---

38

Rudolph L. Celli, Jr., for appellant.

Karen Quesnel, Tax Div., Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Jeffrey R. Howard, U.S. Atty., Robert E. Lindsay, Alan Hechtkopf and Gail Brodfuehrer, Tax Div., Dept. of Justice, were on brief, for the U.S.

Before BREYER, Chief Judge,
CAMPBELL, Circuit Judge, and
CAFFREY,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Hubert Michaud appeals from the district court's denial of his petition for writ of error *coram nobis*. Michaud seeks a judgment of acquittal, or, alternatively, a new trial. Michaud was convicted on tax evasion charges for the years 1980 and 1981 under 26 U.S.C. § 7201 (1982). This is his third appeal to this court in this case. On Michaud's direct appeal alleging governmental misconduct and insufficiency of the evidence, we affirmed the conviction. *United States v. Michaud*, 860 F.2d 495 (1st Cir.1988). Michaud then appealed from the district court's denial of his *pro se* motion under 28 U.S.C. § 2255, seeking relief from the same conviction. We affirmed the district court's denial of the motion because Michaud was no longer in custody when the motion was filed. *United States v. Michaud*, 901 F.2d 5 (1st Cir. 1990) (per curiam). Now, in this petition for a writ of error *coram nobis*, Michaud reasserts arguments made in his § 2255 motion, and reconfigures issues previously

* Of the District of Massachusetts, sitting by designation.

resolved on direct appeal as claims of his counsel's conflict of interest and ineffective assistance, as well as of prosecutorial misconduct. We affirm.

■ We observe initially that the district court dismissed Michaud's petition without an evidentiary hearing. While Michaud does not request us to remand for such a hearing, this appeal implicitly raises the question whether there should have been a hearing at which the facts surrounding Michaud's allegations would be further developed. We think not. On motion for post-judgment relief,

> [c]onclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing, " 'as are contentions that in the face of the record are wholly incredible....' " *Phillips v. Murphy*, 796 F.2d 1303, 1304 (10th Cir.1986) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 [97 S.Ct. 1621, 1629, 52 L.Ed.2d 136] (1977));

*Hopkinson v. Shillinger*, 866 F.2d 1185, 1211 (10th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990). *See also Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.1990) (petitioner not entitled to evidentiary hearing where claims are conclusory and unspecific); *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir.1990) (per curiam) ("A petition [for post-judgment relief under 28 U.S.C. § 2255] can be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' ") (citations omitted).

---

1. The *Morgan* Court specifically identified continuing results of a conviction, such as heavier penalties for future convictions and effects on civil rights, as justifying issuance of the writ to correct fundamental error. *Id.* at 512, 74 S.Ct. at 253. Here, the district court has entered a contempt citation against Michaud for failure to pay a $60,000 fine levied as part of his sentence. This satisfies any possible collateral consequences requirement for *coram nobis* relief. *See United States v. Marcello*, 876 F.2d 1147,

## I.

Collateral attack on a judgment by common law writ of error *coram nobis*, preserved by the All Writs Act, 28 U.S.C. § 1651(a), is limited to "those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 188, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979), *citing United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914). Historically, *coram nobis* has been justified where errors of fact are raised which have not previously been before the court. *United States v. Bush*, 888 F.2d 1145, 1148 (7th Cir.1989) (discussing history of *coram nobis* and collecting cases). "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Addonizio*, 442 U.S. at 188, 99 S.Ct. at 2242 (footnote omitted). *See United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954) ("Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [of *coram nobis* ] only under circumstances compelling such action to achieve justice.").[1]

The facts of this case are fully set forth in our opinion on direct appeal, and we restate them only insofar as is necessary to address the issues raised in this petition for writ of error *coram nobis*. Michaud was convicted of tax evasion for taking deductions for bogus charitable contributions made to the Life Science Church ("LSC"), which is not a charitable organization qualified for tax exempt status under 26 U.S.C. § 501(c)(3), but, rather, was organized sim-

---

1154 (5th Cir.1989) (continuing civil disabilities are a necessary condition for issuing writ of *coram nobis* ). We need not decide whether any such requirement applies in this circuit. *See United States v. Craig*, 907 F.2d 653, 658 (7th Cir.1990) (noting split in circuits on requirement that civil disability be shown, referencing cases applying presumption that all criminal convictions carry adverse consequences, *citing, e.g., United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir.1989)).

ply to offer a mechanism to reduce personal income taxes.

Michaud's arguments in this appeal, as in his direct appeal, rest principally on allegations of misconduct by Internal Revenue Service ("IRS") Agent Darby Levy, who was assigned to audit Michaud's 1979 tax return. *Michaud*, 860 F.2d at 498. Michaud argued on direct appeal that Agent Levy violated IRS regulations which require that, upon discovery of a "firm indication of fraud," an agent must cease civil investigation and refer the case to the IRS criminal division. 3 Internal Revenue Manual ("IRM") (Audit) § 4565.21 (CCH). Michaud relies on notations Agent Levy made in an activity record to support his allegation that Levy violated this provision.

We rejected Michaud's contentions in this regard on direct appeal. We concluded: *first*, that the facts doubtfully constituted a violation of IRS regulations, which confer discretionary authority to decide when a suspicion of fraud is "firm," *Michaud*, 860 F.2d at 499, *citing Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (considerable weight must be given official's or agency's interpretation of own regulations); and *second*, that violation of a regulation such as this, which is not constitutionally or statutorily mandated, does not prevent prosecution and conviction nor does it require the suppression of evidence. *Michaud*, 860 F.2d at 499, *citing United States v. Caceres*, 440 U.S. 741, 754–55, 99 S.Ct. 1465, 1472–73, 59 L.Ed.2d 733 (1979).

In this appeal, Michaud suggests instances of IRS violations of IRM regulations in addition to those he earlier raised. These include purported violation of regulations requiring that the Criminal Investigation Division specify the need for assistance from Civil Revenue Agent Levy on specific forms, 6 IRM § 9322.2(1) (CCH), and violation of regulations requiring that the Criminal Investigation Division accept a fraud referral from the Civil Audit Division within 20 working days, 2 IRM (Audit) § 4565.23 (CCH). Michaud also contends that two witnesses—his business associates Mayer Friedberg and Anthony Induisi—

committed perjury as government witnesses. Further, he again raises the issue, addressed on direct appeal, of improper cross-examination of his defense expert. *See Michaud*, 860 F.2d at 500. Finally, Michaud asserts that one of his three attorneys, Joseph Rodio, taught classes to IRS auditors on the subject of potential signs of criminal activity during the course of his representation, and that this activity created an actual conflict of interest with Rodio's representation of Michaud.

## II.

Tied in with the above allegations, Michaud makes three arguments on appeal. First, he argues that Attorney Rodio's association with the IRS so affected the adequacy of his representation of Michaud as to deprive Michaud of his Sixth Amendment right to effective assistance of counsel. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court held in the context of multi-defendant representation: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718 (footnote omitted). In *Brien v. United States*, 695 F.2d 10 (1st Cir.1982), this court held that to establish an *actual* conflict of interest, the petitioner must prove, *one*, that "some plausible alternative defense strategy or tactic might have been pursued," and *two*, that "the alternative defense was inherently in conflict with the attorney's other loyalties or interests." *Brien*, 695 F.2d at 15 (footnotes omitted). Michaud submits that Rodio, because of the conflict, declined to conduct a pre-trial investigation of Agent Levy's conduct and declined to demand the production of documents which would allegedly demonstrate Agent Levy's violation of IRS regulations.

Second, Michaud argues that Attorney Rodio's representation amounted to ineffective assistance of counsel which prejudiced his defense. Michaud emphasizes Rodio's failure at trial to probe Agent Levy's com-

pliance with IRS regulations, failure to object to admission of evidence obtained allegedly in violation of IRS regulations, and failure adequately to cross-examine witnesses Induisi and Friedberg to expose their alleged perjury. To establish ineffective assistance of counsel, Michaud must prove that Rodio's deficient performance prejudiced his defense to the point that there is a reasonable probability that the deficiency was outcome determinative. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).[2]

Third, Michaud claims that but for prosecutorial misconduct, he would not have been convicted. Michaud alleges: (1) the government improperly suppressed evidence of Agent Levy's violation of IRS regulations;[3] (2) the government improperly introduced evidence obtained in violation of Michaud's constitutional rights because IRS regulations were violated in obtaining the evidence; and (3) the government improperly questioned witness O'Brien about a past criminal investigation.

■ A fundamental problem with Michaud's above arguments is that they are predicated on factual and legal allegations that either were disposed of on direct appeal, *Michaud*, 901 F.2d at 6; *Tracey v. United States*, 739 F.2d 679, 682 (1st Cir. 1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781, *reh'g denied*, 470 U.S. 1024, 105 S.Ct. 1385, 84 L.Ed.2d 404 (1985) (issues decided on direct appeal may not be relitigated under a different label on collateral review), or are insufficiently specific to

raise an issue of fact that would merit relief. This is so even crediting allegations asserted in Michaud's *pro se* memorandum of law to the district court. Ordinarily, assertions made in briefs and memoranda are insufficient to raise a cognizable issue of fact. *Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 46 (1st Cir. 1984). Here, we indulge appellant as a *pro se* petitioner, construing pleading requirements broadly. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). Even so, the allegations on which Michaud's arguments are based are insufficient. Even *pro se* petitioners must plead specific facts backing up their claims. *Cf. Street v. Fair*, 918 F.2d 269, 271 (1st Cir. 1990) (per curiam) (*pro se* plaintiffs must plead specific facts backing up their claims of civil rights violations) (citation omitted). We address the faulty predicates to Michaud's arguments in turn.

### A. *Conflict of Interest*

■ Michaud's characterization of a conflict of interest on the part of Attorney Rodio is insufficiently specific. Michaud alleges in his brief that Rodio taught classes to IRS auditors regarding signs of criminal activity. In his brief to the district court, Michaud states that Rodio informed him after trial that the IRS advised Rodio that investigation of an IRS agent was inconsistent with Rodio's contractual obli-

**2.** Michaud's conflict of interest and general ineffective assistance arguments are weakened by the fact that he was represented not only by Rodio but by two other defense attorneys. Michaud explains that Lorraine Hansen was hired only as New Hampshire local counsel and William Dimitri, Jr. was hired as a trial litigator in late 1987, after indictment. Michaud asserts he hired Rodio, a tax expert, as lead counsel. Nonetheless, while Rodio examined one defense witness (O'Brien) and participated in a motion to dismiss the indictment following the government's case, Dimitri examined all other witnesses, delivered the opening and closing arguments, and made objections at trial. Michaud does not allege that Rodio's purported conflict of interest infected Dimitri. Consequently, it is unclear that Rodio's purported inadequacies

could have had a determining adverse effect on Michaud's defense. *See Dziurgot*, 897 F.2d at 1224 ("[conflict of interest] claim is undermined by appellant's admission that [Attorney] David did not actively participate in the trial." ); *United States v. Panasuk*, 693 F.2d 1078, 1079–80 (11th Cir.1982).

**3.** To establish that the government wrongfully suppressed evidence, Michaud must prove a reasonable probability that disclosure of the suppressed evidence would have altered the outcome. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

gation to the IRS, and that he should therefore refrain from investigating the conduct of Agent Levy. Michaud does not specify when, in what capacity or to what extent Rodio was teaching IRS auditors.[4] He fails to specify what duty to the IRS Rodio owed that was in actual conflict with his representation of Michaud.[5] *See Brien, supra.* Michaud merely submits that Rodio unjustifiably declined to investigate Agent Levy's conduct prior to trial or demand production of documents related thereto, and that these deficiencies result from Rodio's conflict of interest. Michaud's allegations, even taken as true, do not suffice to establish a violation of the Sixth Amendment, particularly given Michaud's representation by other counsel. *See* note 2, *supra.*

### B. *Violation of IRS Regulations*

Michaud's allegations that Agent Levy violated IRS regulations underlies his conflict of interest, ineffective assistance, and prosecutorial misconduct claims. Michaud claims that Rodio's failure to investigate these violations prior to and during the trial evidences Rodio's conflict of interest and constituted ineffective assistance. Michaud also asserts that the prosecution's use of evidence allegedly obtained in violation of IRS regulations constituted misconduct. However, because these allegations are either entirely speculative or have been addressed on direct appeal, they cannot support Michaud's claims.

■ Claims based on violations of IRS rules and regulations include the following: (1) Attorney Rodio improperly failed to object to introduction of evidence obtained after Agent Levy allegedly had received a firm indication of fraud and the prosecution improperly introduced such evidence; (2) Attorney Rodio failed to adequately

cross-examine Agent Levy at trial to expose the inconsistency in her testimony that the case's status was civil on October 27, 1983, while her activity record of September 3, 1982 allegedly suggested a firm indication of fraud;[6] (3) the prosecution acted improperly in failing to disclose until late in the trial Agent Levy's activity record and the Fraud Referral Form 2797, 6 IRM Exhibit 9320–1 (CCH), both of which allegedly support the alleged violations of IRS regulations.

IRM § 9322.2(1) requires that the Criminal Investigation Division notify the appropriate IRS Division Chief whether the fraud referral has been declined before investigation, after noting on the copy of the Form 2797 whether a cooperation civil revenue agent should be assigned. Michaud emphasizes that the copy of Levy's Form 2797 provided at trial carries no such notation. Michaud faults Rodio for failing to request Form 3212, presumes that Levy continued her investigation without such proper assignment request, and concludes that this alleged violation should have resulted in the dismissal of the indictment. We need only point out that Michaud incorrectly concludes that non-compliance, if proved, would require dismissal of the indictment. Though this specific IRM violation was not addressed on direct appeal, the holding there—that violations of IRS fraud referral rules and regulations do not constitute a violation of constitutional rights and therefore do not prevent Michaud's prosecution or conviction nor require suppression of evidence—is directly applicable. *Michaud,* 860 F.2d at 499. *See also United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990). Therefore, Michaud's allegations concerning violations of § 9332.2(1), even if supported, would not warrant relief. Also insufficient is Michaud's allegation that the Criminal Inves-

---

**4.** Michaud states in his reply brief to this court that Rodio's relationship with the IRS was "ongoing." However, we cannot recognize this statement as creating an issue of fact. *See Transurface Carriers, supra.*

**5.** Michaud asserts that Rodio told him the IRS requested that Rodio discontinue the Michaud representation, and submits that the IRS audited Rodio's tax returns in retaliation for Rodio's

failure to discontinue the representation. These allegations, without further support, fail to demonstrate what obligations to the IRS were jeopardized by Rodio's Michaud representation.

**6.** As previously noted, Agent Levy was actually cross-examined on Michaud's behalf by Attorney Dimitri, not by Rodio.

tigation Division failed to accept Agent Levy's referral within the twenty working days required by IRM § 4565.23(b). Such a violation, even if proven, would not have required dismissal of the indictment.

■ As for Michaud's allegation that, after finding fraud, Agent Levy improperly continued to investigate him under the guise of a civil investigation, this contention was explicitly addressed and rejected on direct appeal. *Michaud*, 860 F.2d at 499. Michaud's reconfigured claims here based on that same allegation therefore fail.

### C. *Government Witnesses' Perjury*

Michaud also argues Rodio deficiently failed to expose perjury on the part of government witnesses Induisi and Friedberg. These witnesses indicated that Michaud had reason to know his LSC deductions were not legitimate. Friedberg testified to telling Michaud that the Life Science Church was a "scam" and to Michaud's having joked about the scheme. Induisi testified to telling Michaud that the IRS was auditing Induisi as a result of the latter's LSC deduction.

■ Michaud asserts that Induisi's testimony that he told Michaud of the audit was a fabrication. He submits that Induisi purposely held back information of the LSC deduction's invalidity because he wanted Michaud to be investigated in order to divert attention from Induisi's embezzlement from Michaud. Michaud had himself testified at trial that Induisi did not tell him of an audit of Induisi's LSC deduction and did not tell him that the LSC deduction might be inappropriate. However, Michaud proffers no specifics as to Induisi's alleged embezzlement nor does Michaud refer to any new evidence to substantiate his claim

of perjury or to establish that Attorney Rodio's performance was deficient in failing to attack Induisi's credibility on this basis. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064. Michaud's general and unsubstantiated assertions are insufficient to raise an issue warranting further inquiry.

■ Michaud asserts that Mayer Friedberg also committed perjury by stating that the courts had resolved in his favor a lawsuit Michaud brought against him regarding Friedberg's theft of a Michaud company.[7] In his *pro se* memorandum to the district court Michaud states that his appeal in his suit against Friedberg was dismissed for lack of jurisdiction due to a belated notice of appeal, rather than on the merits. Even accepting Michaud's version of the lawsuit's resolution as accurate, it is doubtful if Friedberg's description reached the level of perjury. In addition, proof of the statement's inaccuracy related solely to Friedberg's credibility; it did not go to direct proof of Michaud's guilt. Attorney Dimitri highlighted on cross-examination of Friedberg the latter's unfriendly relationship with Michaud. The mere failure to have attacked Friedberg's credibility on the submitted additional ground would not have rendered Michaud's representation below an objective standard of reasonableness. *See Strickland, supra.*[8]

### D. *Improper Prosecutorial Cross–Examination*

■ Michaud argues that the prosecutor acted improperly in cross-examining defense expert John O'Brien regarding the possibility that O'Brien had recently been the subject of a criminal investigation. This issue was raised and rejected on direct appeal and is no longer open. *Michaud*, 860 F.2d at 500.

---

7. Friedberg's testimony was as follows:
   Mr. Michaud had brought suit against me when I had left his employment. We had gone to the lower courts and they found for us and then he had taken the case to the Supreme Court, and they had found for us at that time.

8. Michaud raises in his reply brief additional instances of alleged perjury, including alleged

perjury on the part of Agent Levy relating to testimony about the time at which she received Michaud's records. We do not reach the merits of this or any of the number of other claims which Michaud raises for the first time in his reply brief. Arguments relating to issues not raised in an opening brief are waived. *United States v. Benavente Gomez*, 921 F.2d 378 (1st Cir.1990).

We conclude that Michaud has not demonstrated fundamental error warranting issuance of a writ of error *coram nobis,* and that the district court properly denied the petition without a hearing. Most of Michaud's allegations in support of his conflict of interest, ineffective assistance and prosecutorial misconduct claims were addressed on direct appeal. The remainder are insufficient to raise issues that might warrant *coram nobis* relief.

*Affirmed.*