# United States Court of Appeals
## For the First Circuit

No. 01-2394

UNITED STATES OF AMERICA,
Appellee,

v.

WALDEMAR BURGOS-CHAPARRO,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Greenberg,* Senior Circuit Judge.

Lorenzo J. Palomares, by appointment of the court, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, Chief, Criminal Division, were on brief for the United States.

October 23, 2002

*Of the Third Circuit, sitting by designation.

**BOUDIN**, **Chief Judge**.  Waldemar Burgos-Chaparro, the defendant-appellant in this case, was indicted along with 27 others on September 22, 1999, for his role in a major drug conspiracy involving cocaine and marijuana.  Burgos was charged in one count with conspiracy to distribute both drugs and in a second count with conspiracy to import them.  The defendants were allocated to four different cases before different judges--seven defendants to a case.  The cases were numbered 99-305 through 99-308, Burgos being included in No. 99-307.

On January 31, 2000, at the insistence of the government, a <u>Foster</u> hearing[1] was held to explore a possible conflict because Burgos' then-counsel--Ernesto Hernandez-Milan--was representing a co-defendant, Roberto Lopez-Morales, in No. 99-308.  After having the risk of conflict explained to him by the judge, Burgos said he preferred to continue being represented by Hernandez; but during the same hearing Hernandez was replaced as counsel for Lopez by another lawyer (Luis Rivera) at Lopez's request.  It appears that Hernandez continued as counsel for Lopez in another unrelated criminal case.

After discovery, a trial date for Burgos was set for February 27, 2001.  Two days before trial, Burgos reached an

_____

[1]Under <u>United States</u> v. <u>Foster</u>, 469 F.2d 1 (1st Cir. 1972), a federal court is obligated to conduct a hearing to inquire into the adequacy of a defendant's representation whenever co-defendants are represented by the same counsel.  <u>Id.</u> at 4-5; <u>see also</u> Fed. R. Crim. P. 44(c).

agreement with the government and pled guilty to one of the two counts, the other being dismissed. On April 6, 2001, a new counsel, Lydia Lizarribar-Masini, replaced Hernandez as counsel for Burgos and represented Burgos in his sentencing proceedings. Lizarribar also represented Lopez in No. 99-308, having apparently taken over from Rivera in December 2000. On August 30, 2001, Burgos--represented by Lizarribar--was sentenced to 168 months in prison.

Now represented by new counsel (his third), Burgos has appealed, claiming that his Sixth Amendment right to counsel has been violated by conflicts of interest on the part of both Hernandez and Lizarribar. The record is poorly developed, as one might expect, because none of the present claims of conflict was presented to the district court by Burgos; indeed, even in this court his Sixth Amendment claims are not easy to disentangle. But nothing presented to us suggests that Burgos has been adversely affected by the potential conflicts of which he complains.

It might well be asked at the outset why Burgos should be entitled to present what are at best marginal claims--certainly no plain error is apparent--when he did not raise any of them in the district court. The short answer is that where a defendant's counsel in a criminal case labors under a supposed conflict, it is unreasonable to expect that counsel to accuse himself (or the already-represented defendant to represent himself on that issue).

See generally 3 LaFave, Israel, & King, Criminal Procedure §
11.7(e) at 629 & n.53 (2d ed. 1999). Whatever qualifications may
exist on the right to raise such issues for the first time on
appeal, the government in this case makes no objection.

We turn then to the merits. In general, a criminal
defendant is entitled to conflict-free representation, although the
right may often be waived after appropriate warnings. See Wheat v.
United States, 486 U.S. 153, 159-63 (1988). In this case Burgos is
not complaining about the conflict issue aired in the Foster
hearing. Not only did Burgos after warnings agree to having
Hernandez represent him and co-defendant Lopez in their related
cases, but the potential conflict was negated on the spot by
Lopez's decision to have Rivera supplant Hernandez as Lopez's
counsel in No. 99-308.

Instead, the focus of Burgos' appeal is on two other
alleged conflicts. In brief, Burgos says that Hernandez also
represented a different co-defendant--Luis A. Feliciano-Valentin--
in one of the related cases (No. 99-308) without any examination of
the conflict by the district court or waiver by Burgos; and Burgos
says that Lizarribar's representation of him at sentencing is
similarly flawed because after Rivera took over the representation
of co-defendant Lopez, Lizarribar in turn succeeded Rivera and
represented Burgos and Lopez at the same time without judicial
scrutiny or consent.

-4-

In general, ineffective assistance of counsel--as opposed to the complete absence of counsel at a critical stage--is tested under the familiar Strickland test; this requires the defendant to show that counsel's performance is so impaired as to be constitutionally inadequate and that this likely affected the outcome of the case. See Strickland v. Washington, 466 U.S. 668, 694 (1984). However, a lesser showing of prejudice is enough where ineffectiveness is traced to a conflict of interest--rather than some other impairment of the right to counsel--that was not identified and properly waived. See Mickens v. Taylor, 122 S. Ct 1237, 1240-41 (2002). Why Supreme Court precedent so qualifies Strickland need not concern us here.

It is a commonplace that divided loyalties may undermine the ability of a single lawyer to represent effectively two defendants charged in the same case. This "potential," said Mickens, ripens into an "actual" conflict where such "a division of loyalties" is shown to have "affected counsel's performance." Mickens, 122 S.Ct. at 1243. Where such an effect is shown, reversal is required without any further showing that the defect in performance altered the outcome. This lessening of the Strickland burden occurs, according to Mickens, whether or not the court has itself failed in its duty to inquire into the conflict. Id. at 1244.

We start with Burgos' claim that Hernandez's dual representation (of Burgos and Feliciano) amounted to such an actual conflict. The district court files in No. 99-308 show that on November 12, 1999, attorney David Roman entered an appearance reciting that he had been retained in this case by Feliciano and that Hernandez agreed to "this substitution." Thus, even before the Foster hearing afforded Burgos and well before his guilty plea, it appears that Hernandez was no longer conflicted on account of his earlier representation of Feliciano in the related case. Burgos' brief is based on the premise, which appears to be mistaken, that Hernandez continued to represent both Feliciano and Burgos during the latter's plea negotiations.

In any event, even if Hernandez had represented both Burgos and Feliciano at some time that mattered, Burgos would have to identify some way in which his representation by Hernandez was compromised by the latter's representation of Feliciano. This could be because of some action taken by Hernandez or by some opportunity foregone, see Guaraldi v. Cunningham, 819 F.2d 15, 17 (1st Cir. 1987) (Breyer, J.); but some adverse action or inaction is required that can be traced to the conflict in loyalty. Merely to speculate that the divided loyalty could have caused such a step is not enough. See, e.g., United States v. Hernandez-Lebron, 23 F.3d 600, 606-07 (1st Cir. 1994).

All Burgos offers is speculation. Thus, Burgos says that where counsel represents two plea bargaining defendants, each defendant may have an interest in implicating the other in order to secure a better deal. Burgos certainly did bargain for a plea. But now represented by conflict-free counsel, he points to nothing to suggest that the government needed Burgos' help against Feliciano, nor that Hernandez failed to get the best deal he could for Burgos because he was trying to protect Feliciano's interest.

Our case law, admittedly pre-<u>Mickens</u>, says that it may be enough to point to an alternative strategy or approach, beneficial to the complaining defendant, that counsel might have taken but was foregone because of conflicting loyalties. <u>See</u> <u>United States</u> v. <u>Michaud</u>, 925 F.2d 37, 40 (1st Cir. 1991). Burgos says that he might have chosen to plead innocent and insisted on trial. But, of course, <u>Michaud</u> assumes a showing that such a course would have been undertaken but for counsel's dual loyalty; and Burgos makes no showing on this point. Nor, given the evidence against Burgos, is there any reason to think that this course held out any promise. The plea colloquy reveals that the government had multiple witnesses ready to testify against Burgos and, apparently, had a videotape of Burgos' illegal activities.

Finally, Burgos says that his plea agreement designated him as a leader of the conspiracy, an admission that would normally adversely affect the guideline range. This is a concession that

could be influenced by dual representation; but again Burgos offers nothing to show that it was so affected. The concession may have been compelled by the evidence or been made a requirement of the plea bargain by the government. Nor did Burgos' concession mean that Feliciano could not also be designated as a leader: "There can, of course, be more than one person who qualifies as a leader . . . of a criminal . . . conspiracy." U.S.S.G. § 3B1.1 app. n.4 (2001).

Burgos' alternative claim--that Lizarribar provided ineffective assistance--is even more quickly answered. It is true that while representing Burgos at sentencing, Lizarribar also represented co-defendant Roberto Lopez-Morales. By the time she began to represent the latter, Lopez had already determined to plead guilty. Burgos provides no reason to think that this dual representation adversely affected Burgos. At most, he speculates that he could have sought to withdraw his own guilty plea but offers no reason to think that this was either a plausible course or that it was adversely affected because Lizarribar also represented Lopez.

<u>Affirmed.</u>