178 F.3d 34,
UNITED STATES, Respondent, Appellee,
v.
James BARRETT, Petitioner, Appellant.
 No. 96-2355.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 2, 1999.
Decided May 27, 1999.
 
 John G.S. Flym, with whom Liz Bostwick was on brief, for appellant.
 Margaret D. McGaughey, Assistant U.S. Attorney, with whom Jay P. McCloskey, U.S. Attorney, was on brief, for appellee.
 Before Torruella, Circuit Judge, Bownes, Senior Circuit Judge, and Lynch, Circuit Judge.
 LYNCH, Circuit Judge.
 
 
 1
 A federal prisoner/parolee, convicted of a serious crime committed twenty-five years ago, seeks to avoid the restrictions imposed by Congress in 1996 on successive petitions for post-conviction relief and argues that it is illegal and unconstitutional to deny him the ability to raise an argument about the validity of his conviction that he could have raised properly in 1990. He has not shown that he is actually innocent and no claims of constitutional dimension are raised on these facts. Under the various applicable gatekeeping mechanisms, which augment society's interests in finality of criminal convictions where there has been no miscarriage of justice, he has not satisfied the preconditions in 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), that would allow him to have the merits of his claim reviewed. He cannot evade the restrictions of § 2255 by resort to the habeas statute, 28 U.S.C. § 2241, or the All Writs Act, 28 U.S.C. § 1651. Resolution of this case involves exploration of the various statutes and legal doctrines authorizing limited review of claims for post-conviction relief. Our conclusion is that while there are very rare circumstances in which review may exist even if the requirements of § 2255 have not been met, this case presents none of those circumstances.
 
 
 2
 James Barrett was convicted of a bank robbery in federal court in 1984. He brought an unsuccessful appeal in 1984 and an unsuccessful § 2255 petition in 1990, and now seeks to bring another petition attacking his conviction. The primary legal questions presented in this case are whether the petition before us is a "second or successive" § 2255 petition, 28 U.S.C. § 2255, and whether Barrett may use § 2241 or § 1651 to bring a claim that would otherwise be barred under § 2255 and 28 U.S.C. § 2244. Each of these raises subsidiary questions; several are questions of first impression for this circuit.
 
 
 3
 * In 1975, three armed men wearing ski masks robbed a bank in Portland, Maine. In 1984, James Barrett was tried for that robbery. Barrett denied any involvement; the chief prosecution witness, Joseph Aceto, said Barrett did participate in the robbery. The jury believed Aceto and not Barrett. Barrett was convicted and sentenced to twenty years of imprisonment. Barrett promptly filed post-trial motions for acquittal and a new trial, which the district court denied. See United States v. Barrett, 598 F.Supp. 469 (D.Me.1984). His conviction was affirmed on direct appeal. See United States v. Barrett, 766 F.2d 609 (1st Cir.1985).
 
 
 4
 In 1990, Barrett filed a petition under § 2255 and then amended it. The amended petition asserted claims under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the failure to disclose various documents, including a transcript of a government interview with Aceto. In a reply brief, Barrett tried to characterize the failure to disclose the transcript as a violation of the Jencks Act, 18 U.S.C. § 3500, as well as a Brady violation. The district court dismissed the petition without addressing the belated and informal Jencks Act claim. See Barrett v. United States, 763 F.Supp. 658 (D.Me.1991). This court affirmed the dismissal. See Barrett v. United States, 965 F.2d 1184 (1st Cir.1992).
 
 
 5
 This appeal, Barrett's third trip to this court for review of the 1984 conviction, concerns his efforts to raise anew the Jencks Act claim that was adverted to in the reply brief. However, since Barrett's 1990 petition was decided, Congress has enacted AEDPA, which places statutory restrictions on the filing of second or successive petitions under § 2255. Cutting through the procedural morass presented, we find three essential questions for us to resolve:
 
 
 6
 1. Does Barrett present a "second or successive" § 2255 petition, as that term is defined under the 1996 AEDPA amendments, and, if so, is his petition barred because it does not meet AEDPA's gatekeeper requirements?
 
 
 7
 2. Does Barrett's claim fall within the savings clause of § 2255, which permits a petitioner to seek relief under § 2241 if § 2255 is "inadequate or ineffective to test the legality of his detention"?
 
 
 8
 3. Does the All Writs Act nonetheless provide Barrett with a vehicle for raising his Jencks Act claim?
 
 
 9
 The answer to the first question is yes, and the answer to the second and third questions is no. We affirm the dismissal of Barrett's petition.
 
 II
 
 10
 We describe in detail the travel of the issues to this court. In June of 1990, Barrett filed a pro se petition under § 2555 requesting that his sentence be vacated or set aside. The court appointed counsel, different counsel than in the instant petition. Five months after Barrett's petition was first filed, he filed an amended habeas petition, with counsel's assistance, alleging that the government had failed to disclose certain evidence. Among that undisclosed evidence was a transcript of an interview conducted in Arkansas by an FBI agent with Aceto, the chief prosecution witness. This interview took place in the presence of the prosecuting Assistant U.S. Attorney ("AUSA") on January 26, 1984, about two months before Barrett's trial. Before the trial, the government promised to disclose all prior statements by Aceto and provided Barrett with a redacted summary of the interview on FBI Form 302. But the government did not provide a copy of the transcript, and that failure underlies the case before us.
 
 
 11
 Barrett's 1990 amended § 2255 petition alleged that the failure to provide the interview transcript violated Brady. On January 4, 1991, the government responded to the amended petition; included in its response was an affidavit from the AUSA who was present at the interview--a different AUSA than represents the government before us now. The AUSA stated that the interview was conducted to assist the FBI in its investigation of two other suspected participants in the bank robbery, who were fugitives at the time and were considered extremely dangerous. According to the AUSA, since security concerns were very high he "never considered the sensitive investigative information in the transcript as discoverable."
 
 
 12
 On February 19, 1991, Barrett filed "Plaintiff's Motion for Leave to File a Brief Reply Memorandum," which asserted that "several legal arguments and factual assertions raised by the government ... require a response from plaintiff." After the district court granted this motion, Barrett filed a reply brief on February 22, 1991; this brief raised for the first time a claim that the failure to disclose the interview transcript violated the Jencks Act. Barrett did not seek to amend his § 2255 petition to add this claim, and the government did not respond to it.
 
 
 13
 On April 30, 1991, the district court dismissed the amended petition without mentioning the Jencks Act claim. The court did, however, extensively discuss the Arkansas interview transcript in order to determine whether a constitutional violation had occurred under Brady. See Barrett, 763 F.Supp. at 662-63. In arguing to the district court that the government's failure to produce the transcript made a constitutional difference, Barrett raised several specific purposes for which he would have used the transcript to impeach Aceto. See id. at 662. Applying the test set forth in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), which states that "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial," id. at 678, 105 S.Ct. 3375, the court addressed each of these purposes and concluded, after careful analysis, that its "confidence in the outcome of the trial [was] not diminished in any respect," Barrett, 763 F.Supp. at 662-63. The court noted that "Aceto was thoroughly impeached by far more substantial means: his mental illness, inconsistencies between trial and previous testimony, his prior criminal behavior, and his agreement with the government. Yet the jury believed him." Barrett, 763 F.Supp. at 663 (footnote omitted).
 
 
 14
 After the district court issued this opinion, Barrett's counsel filed an unsigned and undated motion for reconsideration on the ground that the Jencks Act claim had not been addressed. That motion was stricken on June 6, 1991 for failure to comply with various applicable rules requiring counsel's signature. Two later motions for reconsideration based on the same issue were filed and denied.
 
 
 15
 On appeal to this court from the denial of the § 2255 petition, Barrett argued both the Jencks Act claim arising from the failure to disclose the interview transcript and various Brady claims. This court affirmed the dismissal of the Brady claims. See Barrett, 965 F.2d at 1188-92 & n. 15. As to the Jencks Act claim, this court held that the reply brief that first raised the claim to the district court was not properly characterized as a "traverse"; that the motions to reconsider were untimely under Federal Rule of Civil Procedure 59(e); and that, if the motions for reconsideration were considered Rule 60 motions, "petitioner would fare no better, since the district court orders denying the motions were never appealed." Id. at 1187-88 & n. 3. Accordingly, this court stated, "as a practical matter, petitioner's failure to raise the Jencks Act claim in a timely manner below preclude[d] effective appellate review on the merits." Id. at 1188.
 
 
 16
 This court also suggested, "without deciding," several concerns about any future attempts by Barrett to raise the Jencks Act claim. First, we expressed doubts about the viability of such a claim under § 2255, given "the recognized rule that nonconstitutional claims may not be presented in a section 2255 proceeding unless the claimed error of law [represents] a fundamental defect which inherently results in a complete miscarriage of justice." Id. (internal quotation marks omitted). Second, we stated that a future attempt to raise the Jencks Act claim would be "a successive § 2255 petition" subject to "abuse of the writ" analysis. Id. at 1188 n. 7 (citing McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).
 
 
 17
 The opinion of this court affirming the denial of the § 2255 petition was issued on June 8, 1992. Barrett did nothing to pursue his Jencks Act claim for four years. On April 24, 1996, AEDPA became effective. Barrett filed his current petition later in 1996. AEDPA changed both the procedure for obtaining permission to bring a "second or successive" § 2555 petition and the substantive standards that must be met to obtain such permission.
 
 III
 AEDPA Standards
 
 18
 Under AEDPA, a prisoner may file a second or successive § 2255 petition only if the court of appeals first certifies that the petition is based on either:
 
 
 19
 (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
 
 
 20
 (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
 
 
 21
 28 U.S.C. § 2255 (cross-referencing to § 2244 certification requirements); see also id. § 2244(b)(3)(A) (requiring authorization by the court of appeals "[b]efore a second or successive application ... is filed in the district court"); First Cir. Interim Local Rule 22.2. "From the district court's perspective," these pre-clearance provisions are "an allocation of subject-matter jurisdiction to the court of appeals." Nunez v. United States, 96 F.3d 990, 991 (7th Cir.1996). Therefore, "a district court, faced with an unapproved second or successive habeas petition, must either dismiss it or transfer it to the appropriate court of appeals." Pratt v. United States, 129 F.3d 54, 57 (1st Cir.1997) (citations omitted), cert. denied, --- U.S. ----, 118 S.Ct. 1807, 140 L.Ed.2d 945 (1998).[1]
 
 
 22
 AEDPA also requires a "certificate of appealability" ("COA") for an appeal of the final disposition of a § 2255 petition. See 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a proceeding under section 2255."); id. § 2253(c)(2)-(3) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.... The certificate of appealability ... shall indicate which specific issue or issues satisfy [this] showing...."); Fed. R.App. P. 22(b). This court has interpreted these provisions to permit the district courts to issue the requisite COAs, although petitioners may seek supplemental COAs from the court of appeals in certain circumstances. See Bui v. DiPaolo, 170 F.3d 232, 236-38 (1st Cir.1999); Grant-Chase v. Commissioner, New Hampshire Dep't of Corrections, 145 F.3d 431, 435 (1st Cir.) (noting that "every court of appeals that has considered the question has concluded that a district judge may issue a COA"), cert. denied, --- U.S. ----, 119 S.Ct. 361, 142 L.Ed.2d 298 (1998).
 
 Barrett's 1996 Petition
 
 23
 These AEDPA provisions are applicable to our consideration of Barrett's most recent petition. In the late summer of 1996, Barrett petitioned "to set aside judgment of conviction and for such other and further relief as this Court may deem appropriate," styling his petition as brought pursuant to 28 U.S.C. §§ 1651, 2241, 2255, and Article I, § 9, clause 2 of the Constitution. The magistrate judge issued an order returning the petition on the ground that it was a "second or successive" § 2255 petition that had not been pre-cleared by the court of appeals; the district court, upon reviewing Barrett's objections, affirmed. Barrett appealed. After proceedings not here relevant, the district court treated the notice of appeal as a request for a COA and certified the following issue:
 
 
 24
 Whether, in the circumstances of this case, the application of the provisions of the [AEDPA], which bar the filing of successive petitions under 28 U.S.C. § 2255 absent an order of the Court of Appeals authorizing the District Court to consider the petition, so as to bar the filing of the petition herein, conflicts impermissibly with the All Writs Act, 28 U.S.C. § 1651, to deny Petitioner his federally protected rights of equal protection of the laws and of due process of law under the Fifth Amendment to the Constitution of the United States.
 
 
 25
 Barrett then filed an application for a COA in this court; we stated that the appeal could proceed to briefing "[i]n view of this court's recent decision [in Grant-Chase ] concluding that when a district court has granted a[COA] on an issue, an appellant is not required to obtain a further certificate from this court with respect to that issue."
 
 
 26
 Given this procedural history, this court has jurisdiction to consider all three essential issues, outlined above, necessary to resolve Barrett's appeal. As to Barrett's claim pursuant to § 2255, our authority to consider the necessary issues is similar to the Pratt court's. To the extent that Barrett contends that AEDPA is not applicable to his claim, the district court's order is appealable and a COA has issued regarding the propriety of applying AEDPA. See Pratt, 129 F.3d at 57-58; see also In re Davenport, 147 F.3d 605, 607 (7th Cir.1998). To the extent that there is a question regarding the applicability of the "second or successive" provisions of AEDPA, we exercise our discretion to construe this appeal as an application to us for pre-clearance, and no COA is necessary. See Pratt, 129 F.3d at 58; Pease v. Klinger, 115 F.3d 763, 764 (10th Cir.1997) (per curiam).[2] Finally, as to Barrett's claim that he should have been allowed to proceed in the district court pursuant to § 2241 or § 1651, the COA and pre-clearance requirements are not directly applicable. See Davenport, 147 F.3d at 607; Valona v. United States, 138 F.3d 693, 694 (7th Cir.1998); Triestman v. United States, 124 F.3d 361, 373 n. 17 (2d Cir.1997); McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 n. 1 (10th Cir.1997); Salaam v. United States, No. 98-CV-4244, 1998 WL 812634, at * 2 (E.D.N.Y. Nov.20, 1998). Barrett's underlying substantive claim under the Jencks Act is therefore before us only to the extent that the nature of that claim is relevant to the determination of whether there is a means available for asserting it.
 
 IV
 
 27
 A. "Second or Successive" Petition Under § 2255
 
 
 28
 We begin by considering Barrett's claim under § 2255. It is clear that this provision is facially applicable to his petition: he challenges the validity of his conviction; he is "in custody"[3]; his request for relief was made to the federal court that sentenced him; and he himself invoked § 2255 as a basis for jurisdiction. See Valona, 138 F.3d at 694-95. The issue becomes how his petition is affected by the "second or successive" requirements applicable to § 2255 petitions. Barrett makes three general arguments. He says that this is really a first petition. Even if not technically a first petition, he says it should be treated as one because he attempted to raise the Jencks Act claim in his first petition. He also suggests that application of the "second or successive" requirements would be impermissibly retroactive and would raise constitutional problems.
 
 
 29
 Meaning of "Second or Successive" and the Abuse of the Writ Doctrine
 
 
 30
 As Barrett points out, AEDPA leaves the phrase "second or successive" undefined.[4] See Galtieri v. United States, 128 F.3d 33, 35 (2d Cir.1997) ("[W]hen is a petition 'second or successive' within the meaning of ... [AEDPA?] Unfortunately, as with many legal questions, the answer is: 'It depends.' "). However, there is significant guidance as to whether Barrett's most recent petition falls within the scope of AEDPA's "second or successive" restrictions. As an initial matter, courts construing the phrase have generally applied pre-AEDPA abuse of the writ decisions. See Esposito v. United States, 135 F.3d 111, 113 (2d Cir.1997) (per curiam); Pratt, 129 F.3d at 60; Reeves v. Little, 120 F.3d 1136, 1138 (10th Cir.1997) (per curiam). As was true pre-AEDPA under the abuse of the writ doctrine, "a numerically second petition is not 'second or successive' if it attacks a different criminal judgment or if the earlier petition terminated without a judgment on the merits." Pratt, 129 F.3d at 60; see also Esposito, 135 F.3d at 113.
 
 
 31
 Further definition is given in a series of post-AEDPA decisions in this court and other courts of appeals. A petition is not "second or successive" when a state petitioner whose first petition was dismissed for failure to exhaust state remedies brings a new petition based on exhausted claims. See Carlson v. Pitcher, 137 F.3d 416, 420 (6th Cir.1998) ("[T]he very sound rationales supporting this result are not altered by the additional consideration that the second-in-time petition may contain new habeas claims not presented in the first petition."); McWilliams v. Colorado, 121 F.3d 573, 575 (10th Cir.1997); In re Gasery, 116 F.3d 1051, 1052 (5th Cir.1997) (per curiam); Christy v. Horn, 115 F.3d 201, 208 (3d Cir.1997) (holding that the concerns of finality and comity underlying the abuse of the writ doctrine "are not implicated when a petition is filed after a prior petition is dismissed for lack of exhaustion"); In re Turner, 101 F.3d 1323, 1323 (9th Cir.1997) (per curiam) (noting that petitioner is raising the same claims that he raised in the prior petition that was dismissed for lack of exhaustion); Dickinson v. Maine, 101 F.3d 791, 791 (1st Cir.1996) (per curiam); Camarano v. Irvin, 98 F.3d 44, 46 (2d Cir.1996) (per curiam) ("[A]pplication of the gatekeeping provisions to deny a resubmitted petition in cases such as this would effectively preclude any federal habeas review and thus, would conflict with the doctrine of writ abuse, as understood both before and after Felker .... To foreclose further habeas review in such cases would not curb abuses of the writ, but rather would bar federal habeas review altogether."); cf. Denton v. Norris, 104 F.3d 166, 167 n. 2 (8th Cir.1997) (remarking that "[t]here may be circumstances in which the statute should not be literally and woodenly applied"). These cases do not directly apply to Barrett, who was convicted of a federal crime.
 
 
 32
 Other decisions have created an exception for at least three categories of cases: (1) where the earlier petition was rejected for failure to pay the filing fee or for mistakes in form, see O'Connor v. United States, 133 F.3d 548, 550 (7th Cir.1998); Benton v. Washington, 106 F.3d 162, 164-65 (7th Cir.1996); (2) where the earlier petition was labeled a § 2255 petition but actually was a § 2241 petition challenging the execution rather than the validity of the sentence, see Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir.1997); and (3) where the second petition challenges parts of the judgment that arose as the result of the success of an earlier petition, see, e.g., In re Taylor, 171 F.3d 185, 187-88 (4th Cir.1999); Esposito, 135 F.3d at 113; Pratt, 129 F.3d at 61-62; Walker v. Roth, 133 F.3d 454, 455 & n. 1 (7th Cir.1997) (per curiam); cf., e.g., Shepeck v. United States, 150 F.3d 800, 801 (7th Cir.1998) (per curiam). These categories also do not apply to Barrett.
 
 
 33
 Barrett rather tries to build on the Supreme Court's recent interpretation of the phrase "second or successive" in Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). In Stewart, the Supreme Court held that a petition was not second or successive within the meaning of the AEDPA state habeas provisions when the claim at issue had been raised in a previous petition but dismissed by the district court as premature and unripe (although the district court had resolved the ripe claims presented in the first petition on their merits).
 
 
 34
 [The most recent petition] may have been the second time that respondent had asked the federal courts to provide relief on his Ford claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to [the second or successive provision]. There was only one application for habeas relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe. Respondent was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal habeas relief.
 
 
 35
 Id. 118 S.Ct. at 1621. The Supreme Court compared the case before it to the cases involving dismissals for nonexhaustion, and explained that "[t]o hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." Id. at 1622 (noting that the Ford claim could not be decided at the time it was first presented because petitioner's "execution was not imminent").
 
 
 36
 The rationale of the Stewart decision does not help Barrett, but reinforces that his claim does not fall within an exception to the "second or successive" rule. Part of the Stewart Court's rationale for finding that the previously premature claims were not second or successive was that those claims "would not be barred under any form of res judicata." Id. The core of the AEDPA restrictions on second or successive § 2255 petitions is related to the longstanding judicial and statutory restrictions embodied in the form of res judicata known as the "abuse of the writ" doctrine. As the Supreme Court noted in Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), as to similar restrictions on § 2254 petitions, "[t]he new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.' " Id. at 664, 116 S.Ct. 2333; see also O'Connor, 133 F.3d at 550 (stating that "the idea ... is that a prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack").
 
 
 37
 Cases in which numerically second petitions have not been treated as "second or successive" can be understood as describing factual scenarios in which the application of a modified res judicata rule would not make sense. See Vancleave v. Norris, 150 F.3d 926, 928 (8th Cir.1998) (stating that Stewart recognizes "that some types of 'second' petitions do not implicate the judicially developed abuse-of-the-writ principles that were the basis for AEDPA's statutory restrictions"); Camarano, 98 F.3d at 46-47 (analogizing to civil claim preclusion doctrine); 2 Liebman & Hertz, Federal Habeas Corpus Practice and Procedure § 28.3a, at 275 (2d ed. Supp.1997) ("Applying the no-second-bite rule makes no sense when a prior petition gave the prisoner what amounts to no bite at the apple--because the prior petition involved a different apple, because no bite was taken when the apple previously was before the court, or because no bite could have been taken at that time because the claim had not yet come into existence or would not have been cognizable at the time of the earlier petition." (emphasis in original)); see also id. § 28.3b, at 1163-71 (3d ed.1998). We do not purport to define the full scope of the phrase "second or successive." However, as a general matter, if a petition falls under the modified res judicata rule known as the abuse of the writ doctrine--because, for example, it raises a claim that could have been properly raised and decided in a previous § 2255 petition--it also falls within the definition of "second or successive."[5] Once the petition is defined as "second or successive," review occurs only if certain requirements are met.
 
 Application to Barrett's 1996 Petition
 
 38
 Applying these principles, we conclude that Barrett's current petition is a "second or successive" one. This petition does not fit into any of the exceptions described above: Barrett's 1990 petition, which was undisputedly brought pursuant to § 2255, was dismissed on the merits (although the Jencks Act claim was not considered); his current petition challenges the same judgment that was challenged in his 1990 petition; and there has been no new judgment or amendment of sentence. See Thomas v. Superintendent/Woodbourne Corr. Facility, 136 F.3d 227, 229-30 (2d Cir.1997) (per curiam).
 
 
 39
 Further, there is no question that Barrett's Jencks Act claim was available and, unlike the Ford claim at issue in Stewart, could have been both brought and adjudicated at the time of the first petition. Barrett had the transcript of the interview with Aceto at the time he brought the Brady claim in the 1990 petition. Although Barrett leans heavily on the contention that his Jencks Act claim was not available until after the filing of the AUSA's affidavit, which he characterizes as an admission of bad faith, it cannot be that a Jencks Act claim asserting bad faith is unavailable until there has been a direct admission from the prosecutor--a circumstance that is surely a rare one. Assuming that the existence of bad faith was necessary in order to raise the claim, Barrett had in front of him various facts from which he could have marshaled a reasonable argument to that effect. Cf. McCleskey v. Zant, 499 U.S. 467, 498-500, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (explaining that "cause" for the failure to raise a claim is not established if "petitioner possessed ... a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process" (citing § 2254 provisions on discovery, expansion of the record, and evidentiary hearing)). Indeed, Barrett's own brief to us on this appeal seems to construct an argument--that total suppression is equivalent to willful destruction, which is equivalent to an "elect[ion] not to comply" with the Act, 18 U.S.C. § 3500(d)--that does not rely on any government admissions. See Appellant's Brief at 26-27.
 
 
 40
 Barrett now asserts that he should be excused from his failure to raise the Jencks Act claim in his first petition because, he says, filing such a claim prior to the submission of the AUSA's affidavit would amount to a violation of Rule 11. That is not so. See Fed.R.Civ.P. 11(b)(3) (stating that an attorney presenting a pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"); Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir.1992); Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir.1990); see also 1 Liebman & Hertz, supra, § 11.3b, at 488-89 (3d ed. 1998) ("[A] reasonable, even if as yet unconfirmed, belief that a meritorious fact-based claim exists may oblige the prisoner ... to raise the claim and to pursue it via, e.g., court-funded investigation ..., discovery, an evidentiary hearing, and other fact-development procedures of the sort that often are not fully available to prisoners until they file a habeas corpus petition. Thus, as Justice O'Connor has stated, referring ... to McCleskey, the Court's 'carefully crafted doctrines of waiver and abuse of the writ make it especially important that the first petition adequately set forth all of a state prisoner's colorable grounds for relief.' " (quoting McFarland v. Scott, 512 U.S. 849, 860, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (O'Connor, J., concurring in the judgment in part)) (footnote omitted)); Rule 6 Governing Section 2255 Proceedings for the United States District Courts.
 
 
 41
 Burther, even assuming that the AUSA's affidavit was more than simply "evidence discovered later [that] might also have supported or strengthened the [existing] claim," McCleskey, 499 U.S. at 498, 111 S.Ct. 1454, Barrett also had the option of seeking to amend his petition again to add the claim. See Fed.R.Civ.P. 15 (stating that "leave [to amend] shall be freely given when justice so requires"); Rule 12 Governing Section 2255 Proceedings for the United States District Courts; United States v. Craycraft, 167 F.3d 451, 457 & n. 6 (8th Cir.1999); 2 Liebman & Hertz, supra, § 28.1, at 1145-46 (3d ed. 1998) ("If claims become available after the habeas corpus petition is filed, the petitioner generally should amend the new claims into the petition at the earliest possible opportunity...."). He did not even attempt to do so. Cf. In re Hill, 113 F.3d 181, 183 (11th Cir.1997) (per curiam) (stating that "the liberal amendment policy applicable to habeas petitions may make [new] claims ... 'available' to the petitioner during a prior habeas action, even when the claim would not have been available at the inception of that prior action").
 
 
 42
 Barrett also makes a separate argument. He argues that the Jencks Act claim was in fact properly presented in his first petition and that he should not be penalized for the failure of the court to address it. While such a situation is conceivable, cf. Wainwright v. Norris, 121 F.3d 339, 340-41 (8th Cir.1997), it is not the situation that we face here. This court has already rejected Barrett's argument that he properly presented the Jencks Act claim by traverse and has held that the district court did not err in failing to rule on the claim. See Barrett, 965 F.2d at 1187-88 & n. 3. Whether we consider this holding to be law of the case or law of the circuit (indeed, we have relied on it in subsequent opinions), Barrett's challenge to it, which largely consists of citations to factually and legally distinguishable cases,[6] has not provided us with a rationale for disturbing our own previous resolution of the issue. See Lacy v. Gardino, 791 F.2d 980, 984-85 (1st Cir.1986); see also Shore v. Warden, Stateville Prison, 942 F.2d 1117, 1123 (7th Cir.1991); Aldridge v. Dugger, 925 F.2d 1320, 1326 (11th Cir.1991); cf. Jeffries v. Wood, 114 F.3d 1484, 1492 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997); Singleton v. United States, 26 F.3d 233, 240 (1st Cir.1994); United States v. Michaud, 925 F.2d 37, 43 (1st Cir.1991).
 
 
 43
 Barrett's Jencks Act claim was not dismissed without prejudice when his first petition was decided, or missed through some error of the court's. The situation presented here is therefore equivalent to the common situation in which a petitioner who has failed to raise an available claim in his first petition attempts to raise that claim in a later petition. That situation clearly falls within the "second or successive" rule, even though the claim has never been adjudicated on the merits. See Pratt, 129 F.3d at 62 ("As a general rule, a prisoner who had both the incentive and the ability to raise a particular claim in his first petition for post-conviction relief, but declined to assert it, cannot raise it the second time around."); see also Corrao v. United States, 152 F.3d 188, 191 (2d Cir.1998) ("Generally, a § 2255 petition is 'second or successive' if a prior § 2255 petition, raising claims regarding the same conviction or sentence, has been decided on the merits. This remains true even if the latter petition purports to raise new claims." (citation omitted)).
 
 
 44
 As we stated in Pratt,
 
 
 45
 The requirement that all available claims be presented in a prisoner's first habeas petition is consistent not only with the spirit of AEDPA's restrictions on second and successive habeas petitions, but also with the preexisting abuse of the writ principle. The requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for a unitary presentation to the district court. This exercise advances the cause of judicial efficiency and further justifies barring [petitioner]'s second petition.
 
 
 46
 Pratt, 129 F.3d at 61. Accordingly, Barrett's § 2255 petition is "second or successive" within the meaning of AEDPA--the result we suggested in our previous, pre-AEDPA decision in this case.[7] See Barrett, 965 F.2d at 1188 n. 7.
 
 
 47
 The Retroactivity Argument and the Pre-AEDPA Test
 
 
 48
 Barrett contends that, even if we construe his petition as a "second or successive" § 2255 petition, he meets the requirements for proceeding in the district court because the restrictions in AEDPA on such petitions should not apply to him. Despite the instruction in Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), that the provisions of AEDPA govern petitions filed after April 24, 1996, see id. at 326-27, 117 S.Ct. 2059; Pratt, 129 F.3d at 58, Barrett ignores the AEDPA amendments to § 2255. Barrett instead confines his argument to the terms of the test set forth in McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), which is less restrictive than the AEDPA amendments, see Galtieri, 128 F.3d at 35-36; Benton, 106 F.3d at 163.
 
 
 49
 Barrett attempts to justify his avoidance of AEDPA by asserting that the 1996 amendments may not be applied "retroactively" to him given that his first petition was brought before the enactment of AEDPA. We construe his somewhat abbreviated argument to be that he relied on the law as it existed before AEDPA in his approach to the Jencks Act claim in his first petition, and that this reliance interest deserves protection. We have not adopted this so-called "mousetrapping" doctrine, see Burris v. Parke, 95 F.3d 465, 468-69 (7th Cir.1996) (en banc), and do not do so now. As we did in Pratt, we will assume arguendo that the doctrine is applicable and briefly consider whether Barrett's claim meets the "notoriously difficult to pass" pre-AEDPA test in order to determine whether Barrett may have somehow relied on the prior state of the law. Pratt, 129 F.3d at 58-59; see also United States v. Ortiz, 136 F.3d 161, 166 (D.C.Cir.1998).[8]
 
 
 50
 Under the pre-AEDPA test, a petitioner's failure to raise a claim in a prior petition was excused in either one of two situations. The first was where the petitioner "show[ed] cause for failing to raise [the claim] and prejudice therefrom." McCleskey, 499 U.S. at 494, 111 S.Ct. 1454; see also Andiarena v. United States, 967 F.2d 715, 717 (1st Cir.1992). "Cause" is "some external impediment, such as government interference or the reasonable unavailability of the factual or legal basis for a claim." Andiarena, 967 F.2d at 718 (citing McCleskey, 499 U.S. at 497, 111 S.Ct. 1454); see also Simpson v. Matesanz, 175 F.3d 200, 210-12 (1st Cir.1999) (citing Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998)); Whittemore v. United States, 986 F.2d 575, 578 (1st Cir.1993). The second situation was a showing of a "fundamental miscarriage of justice," defined as an "extraordinary instance[ ] when a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey, 499 U.S. at 494, 111 S.Ct. 1454. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." Calderon v. Thompson, 523 U.S. 538, 118 S.Ct. 1489, 1502-03, 140 L.Ed.2d 728 (1998) (internal quotation marks omitted); see also Simpson, 175 F.3d at 210. To establish "actual innocence," a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 118 S.Ct. at 1611 (internal quotation marks omitted).
 
 
 51
 Here, for the reasons already explained, Barrett is unable to demonstrate cause. He had the opportunity to raise his claim properly at the time of his first petition, but he did not take advantage of it. See McCleskey, 499 U.S. at 498-500, 111 S.Ct. 1454. Whether or not his failure to do so was intentional is of no moment. See id. at 489-90, 111 S.Ct. 1454 (holding that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice"); see also Wainwright v. Sykes, 433 U.S. 72, 85-90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (rejecting the "deliberate bypass" standard articulated in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)).[9]
 
 
 52
 Nor can Barrett demonstrate actual innocence. Despite counsel's strong pronouncement at oral argument of Barrett's innocence, Barrett's claim reduces to a complicated legal argument (analogous to an argument for the suppression of evidence in the Fourth Amendment context): that the Arkansas interview was Jencks Act material; that the government "elect[ed] not to comply" with a court order to turn it over and acted in bad faith; that the remedy under the Act would be to strike Aceto's testimony in its entirety; that without Aceto's testimony Barrett would not have been convicted; and that Barrett's conviction is therefore faulty. 18 U.S.C. § 3500(d); cf. Embrey v. Hershberger, 131 F.3d 739, 741 (8th Cir.1997) (en banc) ("[Petitioner] has conflated his gateway and his ultimate legal claim ...."), cert. denied, --- U.S. ----, 119 S.Ct. 78, 142 L.Ed.2d 61 (1998). Such an assertion of "legal" innocence is not sufficient. See Bousley, 118 S.Ct. at 1611 (stating that " 'actual innocence' means factual innocence, not mere legal insufficiency"). And it has already been determined, through Barrett's prior petition, that the evidence the government failed to produce was not material in a constitutional sense--that is, that it would not raise a reasonable probability of a different outcome. See Barrett, 965 F.2d at 1188-93 & n. 15; see also Calderon, 118 S.Ct. at 1503-04; Burks v. Dubois, 55 F.3d 712, 718 (1st Cir.1995).
 
 
 53
 Barrett has not demonstrated that there would be any impermissible retroactive consequences to applying the AEDPA restrictions to his current petition, even assuming arguendo that is the proper test. Under these AEDPA restrictions, of course, we reach the same conclusion that we reached under McCleskey. Barrett has not argued that he satisfies either of the two AEDPA preconditions for filing a second or successive § 2255 petition, and he patently does not. Therefore, we turn to whether this case fits within the savings clause of § 2255.
 
 
 54
 B. The Savings Clause in § 2255: "Inadequate or Ineffective" Remedy
 
 
 55
 Since Barrett may not proceed with his § 2255 petition, we turn to his argument that the savings clause of § 2255 permits him to proceed under § 2241 as a means of seeking relief. See 28 U.S.C. § 2241 (stating that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions" under specified circumstances).
 
 
 56
 We begin with the limitation on the use of § 2241 petitions by federal prisoners that is set forth in § 2255:
 
 
 57
 An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
 
 
 58
 This circuit has not previously defined the phrase "inadequate or ineffective" or analyzed its scope.[10]
 
 
 59
 A petition under § 2255 cannot become "inadequate or ineffective," thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA "second or successive" requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture. See, e.g., In re Davenport, 147 F.3d 605, 608 (7th Cir.1998) ("Congress did not change [the 'inadequate or ineffective'] language when in the Antiterrorism Act it imposed limitations on the filing of successive 2255 motions. The retention of the old language opens the way to the argument that when the new limitations prevent the prisoner from obtaining relief under 2255, his remedy under that section is inadequate and he may turn to 2241. That can't be right; it would nullify the limitations."); Triestman v. United States, 124 F.3d 361, 376 (2d Cir.1997) ("If it were the case that any prisoner who is prevented from bringing a § 2255 petition could, without more, establish that § 2255 is 'inadequate or ineffective,' ... then Congress would have accomplished nothing at all in its attempts--through statutes like the AEDPA--to place limits on federal collateral review."); In re Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997) (stating that inadequacy or ineffectiveness cannot be established "merely because th[e] petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255," because "[s]uch a holding would effectively eviscerate Congress's intent in amending § 2255"); In re Vial, 115 F.3d 1192, 1194 n. 5 (4th Cir.1997) (en banc) (stating that § 2255 is not inadequate or ineffective simply "because an individual is procedurally barred from filing a § 2255 motion").
 
 
 60
 Such a reading of the savings clause would also recreate the serious structural problems that led Congress to enact § 2255 in the first place. See In re Hanserd, 123 F.3d 922, 925, 934 n. 19 (6th Cir.1997) ("If [petitioner] and similarly situated inmates proceed under habeas corpus [which must be brought in the district with jurisdiction over the custodian], ... courts located near large federal prisons will be inundated with such motions, and witnesses and court records will have to travel thousands of miles to the situs of these habeas hearings, which would be held before a judge unfamiliar with the case."); see also United States v. Hayman, 342 U.S. 205, 210-14, 72 S.Ct. 263, 96 L.Ed. 232 (1952) (discussing the "practical problems" that prompted the enactment of § 2255).[11]
 
 
 61
 Yet the § 2255 savings clause, which has been interpreted to avoid constitutional questions about § 2255, see Davenport, 147 F.3d at 609, must mean something. In three recent cases, the Seventh, Third, and Second Circuits have addressed the meaning of the "inadequate or ineffective" language and given it content. All three cases involved a factual scenario in which the petitioner's first § 2255 petition had been resolved prior to the Supreme Court's decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Under Bailey 's statutory interpretation, actions for which the petitioner had been convicted were in fact not criminal at all, but the petitioner's second petition, which raised a Bailey claim, was barred by the AEDPA "second or successive" rules.
 
 
 62
 In interpreting the savings clause, the Seventh Circuit in Davenport looked to the essential function of habeas corpus. It characterized that function as "giv[ing] a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." Davenport, 147 F.3d at 609. The court stated that a prisoner who "had a chance to raise the question" at issue in his appeal and his first § 2255 petition had already had his reasonable opportunity, and did not need another "procedural shot at getting his sentence vacated." Id. at 609-10 ("Society ... is unwilling to expend indefinitely large judicial resources on repeated testing of the accuracy of a determination of guilt."). However, the court concluded that § 2241 was available where a Bailey claim simply could not have been presented on direct appeal or in a first petition, stating that "[a] procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." Id. at 611; see also id. ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion.").
 
 
 63
 The Seventh Circuit's holding in Davenport is very similar to the Third Circuit's holding in Dorsainvil that § 2241 relief is available in the "unusual circumstance" in which application of the AEDPA "second or successive" limitations would result in a "complete miscarriage of justice." Dorsainvil, 119 F.3d at 251 (internal quotation marks omitted). Like Davenport, Dorsainvil stressed that the petitioner had not had an earlier opportunity to raise his Bailey claim; the court also pointed out that "[t]he government has not suggested that Dorsainvil has abused the writ, the principal situation that the AEDPA was intended to eliminate." Id. Further, the court emphasized that its holding was a "narrow one" and was not intended to interfere with application of the § 2255 gatekeeping provisions. See id. at 251-52 ("[A]llowing someone in Dorsainvil's unusual position--that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate, even when the government concedes that such a change should be applied retroactively--is hardly likely to undermine the gatekeeping provisions of § 2255.").
 
 
 64
 Davenport and Dorsainvil are also similar to, but distinct from, the Second Circuit's holding in Triestman that a federal prisoner can seek § 2241 habeas corpus in "the set of cases in which the petitioner cannot, for whatever reason, utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional questions." Triestman, 124 F.3d at 377. The Triestman court found that such serious questions were raised where "a person ... can prove his actual innocence on the existing record" and "could not have effectively raised his claim of innocence at an earlier time." Id. at 363, 377-78; see also id. at 368 n. 8 (concluding that the petition at hand would not have been barred under the pre-AEDPA "abuse of the writ" doctrine). "[T]he cases in which serious questions as to § 2255's constitutional validity are presented will be relatively few.... In reaching this result, we therefore respect Congress' intent to streamline collateral review and to discourage repetitive and piecemeal litigation, while at the same time we give meaning to Congress' express decision (reaffirmed in the AEDPA) to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it." Id. at 377-78.
 
 
 65
 To the extent that these cases were concerned with the status of a petitioner's claim under pre-AEDPA abuse of the writ law, they may have been narrowed, in effect, by the holding of the Supreme Court in Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Bousley did not address the savings clause, but did hold on a federal prisoner's first petition under § 2255 that "cause" excusing failure to make an argument was not shown by the "futility" of the argument.[12] See id. 118 S.Ct. at 1611, cited in Simpson, 175 F.3d at 210-12. But Bousley retained an actual innocence exception and remanded the case so petitioner had the opportunity to show his actual innocence. See id. 118 S.Ct. at 1611-12.
 
 
 66
 We agree with the Davenport, Dorsainvil, and Triestman courts that habeas corpus relief under § 2241 remains available for federal prisoners in limited circumstances. See also In re Hanserd, 123 F.3d at 929-30 (asserting without discussion that "[i]f AEDPA bars [petitioner] from raising his Bailey issue in a § 2255 motion, he could file a habeas petition pursuant to [the inadequate and ineffective] provision"); United States v. Lorentsen, 106 F.3d 278, 279 (9th Cir.1997) (suggesting that petitioner making a newly available Bailey claim could use § 2241, but not deciding the question because no request for § 2241 relief had been sought before the district court).[13] But it is not necessary in this case to articulate those circumstances precisely--we leave that task for another day. Applying any of the appropriately narrow standards described above clearly demonstrates that petitioner is not entitled to § 2241 habeas relief in this case.
 
 
 67
 Barrett's claim does not raise a question of actual innocence, as the post-Bailey claims of the petitioners in Davenport, Dorsainvil, and Triestman arguably did. See Triestman, 124 F.3d at 378-79; cf. In re Jones, 137 F.3d 1271, 1273 n. 3 (11th Cir.) (per curiam), cert. denied, --- U.S. ----, 118 S.Ct. 1351, 140 L.Ed.2d 499 (1998); McDonald v. Bowersox, 125 F.3d 1183, 1186 (8th Cir.1997) ("Accordingly, we need not decide whether, and in what circumstances, a claim of actual innocence can allow us to waive § 2244(b)(2)'s requirements for our approval of a successive habeas petition."); Bush v. Singletary, 99 F.3d 373, 375 (11th Cir.1996) (per curiam). Further, where a prisoner had an opportunity to present his claim properly in his first § 2255 petition, but failed to do so, any "ineffectiveness" of his current § 2255 petition is due to him and not to § 2255. See United States v. Walker, 980 F.Supp. 144, 146 (E.D.Pa.1997); cf. United States v. Logan, 22 F.Supp.2d 691, 694 (W.D.Mich.1998) ("The Court concludes that any 'ineffectiveness' in this matter is attributable not to § 2255, but to Petitioner, for failure to file within [the AEDPA statute of limitations] period."); Mejia v. INS, No. 97 C 6191, 1998 WL 26163, at * 2 (N.D.Ill. Jan.16, 1998).
 
 
 68
 Nor is a serious constitutional question raised by the fact that AEDPA bars Barrett's claim from being heard on the merits.[14] We need not reach the issue of the extent to which a Jencks Act claim may ever be of constitutional dimension.[15] The decision on Barrett's prior § 2255 petition determined that the use of the nondisclosed material would not have made a difference in the outcome of the trial. Barrett could have raised his claim in his first petition, and Congress may constitutionally treat "second or successive" petitions differently than first ones. See Lonchar v. Thomas, 517 U.S. 314, 323-25, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996); cf. Davenport, 147 F.3d at 610. The Supreme Court has already determined that the AEDPA "second or successive" restrictions applicable to § 2254 do not violate the Suspension Clause, and that reasoning is applicable here. See Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) ("In McCleskey ..., we said that 'the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.' The added restrictions which the Act places on second habeas petitions are well within the compass of this evolutionary process, and we hold that they do not amount to a 'suspension' of the writ contrary to Article I, § 9." (citations omitted) (quoting McCleskey, 499 U.S. at 489, 111 S.Ct. 1454, and citing U.S. Const. Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."))); see also Graham v. Johnson, 168 F.3d 762, 787 (5th Cir.1999); Green v. French, 143 F.3d 865, 875-76 (4th Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999); Ortiz, 136 F.3d at 168; In re Vial, 115 F.3d at 1197-98.[16] Further, the restrictions at issue do not, under the circumstances of this case, offend separation of powers principles or the Article III grant of judicial power. Cf. Green, 143 F.3d at 875-76.
 
 
 69
 Finally, and perhaps most tellingly, Barrett would not have been able to proceed under the pre-AEDPA abuse of the writ doctrine. Therefore, as Barrett implicitly acknowledges, application of the AEDPA standards to bar his § 2255 petition--which would have been barred pre-AEDPA in any event--does not raise any serious constitutional question. See Davis v. Crabtree, 10 F.Supp.2d 1136, 1141 (D.Or.1998) (citing McCleskey, 499 U.S. at 494-95, 111 S.Ct. 1454, and Bousley, 118 S.Ct. at 1611-12); cf. Underwood v. United States, 166 F.3d 84, 88 (2d Cir.1999) ("The same considerations that justify denial of relief under § 2255 [and make petitioner fail the pre-AEDPA abuse of the writ test] also require that relief be denied under § 2241. This is not a case, such as Triestman, in which denial of collateral relief could require a prisoner to serve a sentence for acts that have been ruled not to constitute criminal conduct." (citation omitted)); Ortiz, 136 F.3d at 169 ("Because Ortiz does not satisfy the standards for successive § 2255 motions in place prior to the enactment of AEDPA, applying AEDPA to his motion cannot make him any worse off than he was prior to its enactment.").
 
 C. All Writs Act
 
 70
 Finally, Barrett also argues that he may present his claim as a writ of error coram nobis under the All Writs Act. He may not.[17]
 
 
 71
 Barrett relies on United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), in which the Supreme Court stated that § 2255 should not "be construed to cover the entire field of remedies in the nature of coram nobis in federal courts." Id. at 510, 74 S.Ct. 247. However, this statement must be read in light of Morgan 's broad concern about whether any possibility of coram nobis survived the enactment of § 2255, a provision which was intended to "restate[ ], clarif[y] and simplif[y] the procedure in the nature of the ancient writ of error coram nobis," 28 U.S.C. § 2255 Historical and Statutory Notes 1948 Enactment, and the enactment of Federal Rule of Civil Procedure 60(b), which "expressly abolish[ed] the writ of error coram nobis in civil cases," Morgan, 346 U.S. at 505 n. 4, 74 S.Ct. 247. Although the Court concluded that coram nobis was available to the Morgan petitioner, the Court did not hold that there are situations in which both § 2255 and coram nobis are applicable. The Morgan petitioner was no longer "in custody," as is required in order to seek § 2255 relief. See id. at 503-04, 74 S.Ct. 247.
 
 
 72
 Indeed, as the Supreme Court noted in rejecting the use of coram nobis in Carlisle v. United States, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Id. at 428-29, 116 S.Ct. 1460 (quoting Pennsylvania Bureau of Correction v. United States Marshals Serv., 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985)) (internal quotation marks omitted); see also Aetna Cas. & Sur. Co. v. Markarian, 114 F.3d 346, 350 (1st Cir.1997) ("The All Writs Act does not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." (internal quotation marks omitted)).
 
 
 73
 Barrett asserts that no statute, "other than the Jencks Act and statutory provisions governing direct appeals," specifically addresses the particular issue at hand in his case. However, § 2255 is applicable to Barrett, and the statute specifically addresses this situation by barring Barrett's second § 2255 petition. See, e.g., United States v. Brown, 117 F.3d 471, 475 (11th Cir.1997); United States v. Kindle, 88 F.3d 535, 536 (8th Cir.1996) (per curiam).
 
 
 74
 That § 2255 does not provide Barrett with a means to obtain the relief he seeks does not mean that it is not a "controlling" authority for the purposes of determining whether the All Writs Act applies. The fact that § 2255 bars his second petition at its inception does not make that provision any less controlling. In Carlisle itself, the Court forbade the use of coram nobis to circumvent Rule 29, Fed.R.Civ.P., despite the fact that application of that rule meant that the defendant's motion for a judgment of acquittal was untimely and should have been rejected immediately by the district court without any consideration of the merits or any grant of relief. See Carlisle, 517 U.S. at 428-29, 433, 116 S.Ct. 1460; see also Aetna Cas. & Sur. Co., 114 F.3d at 350 (finding use of the All Writs Act inappropriate where Rule 69(a) had been consistently interpreted to block plaintiff's claim); Ex parte Farrell, 189 F.2d 540, 545 (1st Cir.1951) ("Where the appeal statutes establish the conditions of appellate review [such as timeliness], an appellate court cannot rightly exercise its authority to issue a writ under the 'all writs' section, 28 U.S.C. § 1651, the only effect of which would be to avoid those conditions and thwart the congressional policy. For us to grab hold of the present case under 28 U.S.C. § 1651 would not be in aid of our appellate jurisdiction ..., but would be a palpable evasion of the statutory conditions which Congress has seen fit to impose...."). The writ of coram nobis may not be used to circumvent the clear congressional directive embodied in the "second or successive" provisions of § 2255, which are themselves a sort of "timeliness" requirement. See, e.g., United States v. Damiano, No. CRIM. 90-00488-01, 1997 WL 539704, at * 2 (E.D.Pa. Aug.6, 1997) ("[T]he [AEDPA] limits the ability of a petitioner to obtain relief in later Section 2255 motions and encourages all petitioners to include all of their claims of error in their first motion. For this reason, given the broad purpose of the Act, it would be astounding if [the 'second or successive' restrictions] could be rendered wholly ineffective by the simple ruse of labeling future § 2255 motions as petitions for writs of coram nobis."); Bennett v. United States, No. 87 CR 874, 1997 WL 285987, at * 2 (N.D.Ill. May 22, 1997) ("[Section] 2255 is not unavailable to [petitioner]; it just offers him no relief from his sentence."); see also, e.g., United States v. Bailey, No. 97 C 7665, 94 CR 481, 1997 WL 757869, at * 2 (N.D.Ill. Nov.26, 1997) (applying the same rule in a case involving the AEDPA statute of limitations).[18]
 
 
 75
 It may be that there are situations in which § 2255 is not "controlling" despite the fact that the petitioner remains in custody--for instance, where § 2255 is "inadequate or ineffective." See Triestman, 124 F.3d at 380 n. 24; see also United States v. Ransom, 985 F.Supp. 1017, 1019 (D.Kan.1997). But we have no cause to explore those potential situations in this case, since § 2255 is not "inadequate or ineffective" and so plainly "specifically addresses" the situation that we face.[19] Carlisle, 517 U.S. at 429, 116 S.Ct. 1460 (internal quotation marks omitted); see also Davenport, 147 F.3d at 608 ("[I]f Congress has forbidden federal prisoners to proceed under 2241 even when 2255 is closed to them[,] then it would be senseless to suppose that Congress permitted them to pass through the closed door simply by changing the number 2241 to 1651 on their motions.").
 
 
 76
 The scope of relief obtainable under the All Writs Act is narrowed when a statute governing a particular issue is enacted. Here § 2255, as amended by AEDPA, governs. There is no contention that the AEDPA provisions themselves have somehow amended the All Writs Act. We conclude merely that Barrett is not permitted to proceed with a § 1651 petition under the circumstances of this case.[20] For the reasons already discussed, barring Barrett's petition does not present any constitutional difficulties.
 
 V
 
 77
 We have considered Barrett's remaining arguments; they are without merit. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir.1997) (explaining that this court has "steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation"). Despite Barrett's liberal invocation of federal constitutional principles, this case is in the end simply an example of a garden-variety abuse of the writ--an abuse that would have been forbidden prior to the enactment of AEDPA and is most certainly barred by AEDPA's more stringent provisions. See Pratt, 129 F.3d at 63 ("[Petitioner] failed to marshal all his claims of error in his first section 2255 petition, and he must now pay the piper. AEDPA governs here, and, on the facts of this case, AEDPA's clear language prohibits [petitioner] from rectifying his omission by means of a second petition."); cf. Calderon, 118 S.Ct. at 1502; McCleskey, 499 U.S. at 491-93, 111 S.Ct. 1454.
 
 
 78
 The lessons of this case for the criminal defense bar are clear. A first petition for post-conviction relief under § 2255 should raise all available claims. Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order. Failure to raise an available claim does not permit an end-run around the requirements of § 2255 by resort to § 2241 or the All Writs Act. There is only one bite at the post-conviction apple unless a second or successive petition can show one of two things: a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or newly discovered evidence sufficient to establish by clear and convincing evidence, on the whole record, that no reasonable factfinder would have returned a guilty verdict. A claim of actual innocence--defined as factual innocence, not mere legal insufficiency--will have a mechanism for review.
 
 
 79
 We therefore affirm the district court's dismissal of Barrett's petition. Barrett's appeal is also treated concurrently as a request for leave to file a second or successive habeas petition and that request is denied.
 
 
 
 [1]
 Several circuits have mandated transfer, pursuant to 28 U.S.C. § 1631, rather than dismissal. See In re Sims, 111 F.3d 45, 47 (6th Cir.1997) (per curiam); Coleman v. United States, 106 F.3d 339, 341 (10th Cir.1997) (per curiam); Liriano v. United States, 95 F.3d 119, 122-23 (2d Cir.1996) (per curiam). We have not so mandated, but we note that transfer may be preferable in some situations in order to deal with statute of limitations problems or certificate of appealability issues. See Liriano, 95 F.3d at 122-23
 
 
 [2]
 There is no need to decide whether the 30-day time limitation in 28 U.S.C. § 2244(b)(3)(D), which states that "[t]he court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion," applies here. Even assuming that it does, the limitation is "precatory, not mandatory," Rodriguez v. Superintendent, Bay State Correctional Ctr., 139 F.3d 270, 272 (1st Cir.1998), and the number and nature of issues raised in this case amply justify an extended period of consideration
 
 
 [3]
 Barrett's appellate brief asserts that he was in prison when his petition was filed and is "currently on parole." Neither party disputes that he satisfies the § 2255 "in custody" requirement. See United States v. Michaud, 901 F.2d 5, 6-7 (1st Cir.1990) (per curiam); see also, e.g., United States v. Brown, 117 F.3d 471, 475 & n. 3 (11th Cir.1997)
 
 
 [4]
 Before the passage of AEDPA, the terminology was more complex. See generally Schlup v. Delo, 513 U.S. 298, 319 n. 34, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitions referred to as "[s]uccessive" were those that raised "grounds identical to those raised and rejected on the merits on a prior petition." Kuhlmann v. Wilson, 477 U.S. 436, 445 n. 6, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality opinion). "Abusive" petitions were those in which "a prisoner ... rais[ed] grounds that were available but not relied upon in a prior petition, or engage[d] in other conduct that 'disentitle[s] him to the relief he seeks.' " Id. (quoting Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). "The AEDPA, however, refers to all petitions after the first as 'second or successive.' " Esposito v. United States, 135 F.3d 111, 113 n. 3 (2d Cir.1997) (per curiam)
 
 
 [5]
 There is, of course, a difference between petitions that may go forward because they are not "second or successive" at all and petitions that may go forward, although they are indeed "second or successive," because they meet the applicable AEDPA requirements. The requirements themselves take for granted that some newly available claims will be found in "second or successive" petitions (for instance, "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255). See In re Page, 170 F.3d 659, 661 (7th Cir.1999) ("[Petitioner's] argument is in effect that if there is a reason for filing a second petition--a reason why the claim could not have been included in the first petition--then the second petition is really a first petition. That might make sense if section 2244(b)(2) forbade the filing of a second or subsequent petition. All it does is impose certain limitations designed to make sure that the second or subsequent petition is not gratuitous.")
 
 
 [6]
 Even the most pertinent of the cases Barrett cites do not stand for the propositions he advances. For example, in Smith v. Digmon, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam), the Supreme Court noted in passing that the claim at issue had been raised "to the District Court in petitioner's traverse to the State's response to his petition," but did not directly address the propriety of raising a new claim in that fashion--the only issue in the case was whether the petitioner had exhausted his state remedies. Id. at 332-33, 98 S.Ct. 597. Similarly, Boardman v. Estelle, 957 F.2d 1523 (9th Cir.1992), stated that the district court had erred in finding that an argument raised in a "traverse to the court, filed as a supplement to [the state prisoner's] habeas corpus petition," was "not properly presented because it had not been raised in the habeas corpus petition or in the traverse," id. at 1524-25--but the argument in question was in support of a legal claim raised in the petition, not a new legal claim, see id. Indeed, in a subsequent Ninth Circuit case, the court clearly stated that "[a] Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds.... We conclude that Cacoperdo did not properly raise this claim in the district court." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994); see also United States v. Zuno-Arce, 25 F.Supp.2d 1087, 1113 (C.D.Cal.1998)
 
 
 [7]
 The Supreme Court recently granted certiorari on a question that was reserved in Stewart: "If a person's petition for habeas corpus under 28 U.S.C. § 2254 is dismissed for failure to exhaust state remedies and he subsequently exhausts his state remedies and refiles the § 2254 petition, are claims included within that petition that were not included within his initial § 2254 filing 'second or successive' habeas applications?" Slack v. McDaniel, --- U.S. ----, 119 S.Ct. 1025, 143 L.Ed.2d 36 (Feb. 22, 1999) (granting certiorari); see also Stewart, 118 S.Ct. at 1622 n. *. However, the answer to this question does not control our conclusion that Barrett's petition is "second or successive," since all of the claims properly presented in Barrett's first petition were adjudicated on the merits and he bypassed the opportunity to have his Jencks Act claim adjudicated as well. See Graham v. Johnson, 168 F.3d 762, 774 n. 7 (5th Cir.1999)
 
 
 [8]
 We are cognizant that if we were to perform a "cause and prejudice"/"actual innocence" analysis of every second or successive petition under § 2255, we would be undermining the clear intent of Congress that stricter standards apply under AEDPA and that the pre-clearance process be streamlined. However, this analysis is helpful in this complex case not only to determine questions of retroactivity, as noted above, but also to shed light on questions raised about the constitutionality of AEDPA, which are discussed below
 
 
 [9]
 Because Barrett fails the "cause" prong of the test, we need not consider the "prejudice" prong. Under the abuse of the writ doctrine, he must establish both. See McCleskey, 499 U.S. at 494, 111 S.Ct. 1454; see also Bousley, 118 S.Ct. at 1611
 
 
 [10]
 Federal prisoners are permitted to use § 2241 to attack the execution, rather than the validity, of their sentences, and the "inadequate or ineffective" savings clause is not applicable to such attacks since they are outside the bounds of § 2255. See United States v. DiRusso, 535 F.2d 673, 674-76 (1st Cir.1976) ("Section 2255 ... does not grant jurisdiction over a post-conviction claim attacking the execution, rather than the imposition or illegality of the sentence.... The proper vehicle for attacking the execution of sentence ... is 28 U.S.C. § 2241."); see also, e.g., Corrao, 152 F.3d at 191; Valona, 138 F.3d at 694-95. However, Barrett's challenge (despite his claim that he seeks remedies unavailable under § 2255) clearly involves validity. We also note that a § 2241 petition is properly brought in the district court with jurisdiction over the prisoner's custodian (unlike a § 2255 petition, which must be brought in the sentencing court). See DiRusso, 535 F.2d at 675-76; Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir.1996). We will assume arguendo that Barrett has brought his request for § 2241 relief in the right court (despite his assertion in his brief that he was in prison in Colorado when his petition was filed and now is "in Boston, Massachusetts on parole"). See In re Dorsainvil, 119 F.3d at 252; cf. Phillips v. Seiter, 173 F.3d 609, 610-11 (7th Cir.1999)
 
 
 [11]
 The dictum in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), that "[a federal] prisoner barred by res judicata would seem as a consequence to have an 'inadequate or ineffective' remedy under § 2255 and thus be entitled to proceed in federal habeas corpus--where, of course, § 2244 applies," id. at 14-15, 83 S.Ct. 1068, does not alter our conclusion. Sanders was concerned with avoiding an interpretation of § 2255 that would bar a second or successive petition that requested the same "relief" as a prior petition, regardless of the claims raised. See id. at 7-15, 83 S.Ct. 1068 (rejecting the application of a "res judicata" rule but acknowledging the propriety of "abuse of the writ" doctrine). Sanders obviously does not take account of later developments in the law such as the evolution of the "abuse of the writ" doctrine, see, e.g., McCleskey, 499 U.S. at 486, 494-95, 111 S.Ct. 1454, Congress's enactment of the 1996 amendments to the statute, or the Supreme Court's recent acceptance of a "modified res judicata rule" in the habeas context, Felker, 518 U.S. at 664, 116 S.Ct. 2333
 
 
 [12]
 The Second Circuit has subsequently acknowledged that the Supreme Court's decision in Bousley has cast doubt on the Triestman court's conclusion that "cause" existed for failing to raise the Bailey claim earlier. See Rosario v. United States, 164 F.3d 729, 733 (2d Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 1284, --- L.Ed.2d ---- (1999)
 
 
 [13]
 The conclusion that the post-AEDPA savings clause is narrow in scope is also consistent with pre-AEDPA interpretations of the clause from our sister circuits, which found a remedy under § 2255 to be inadequate or ineffective only on rare occasions. Compare, e.g., Spaulding v. Taylor, 336 F.2d 192, 193 (10th Cir.1964) (finding § 2255 ineffective where original sentencing court was abolished), and Cohen v. United States, 593 F.2d 766, 771 n. 12 (6th Cir.1979) (stating that § 2255 was ineffective where petitioner was sentenced by three courts, none of which could grant complete relief), with Dorsainvil, 119 F.3d at 251 (collecting cases rejecting savings clause arguments), United States v. Pirro, 104 F.3d 297, 299-300 (9th Cir.1997) (stating that mere delay in considering a § 2555 motion does not render a remedy under § 2255 inadequate or ineffective), and Tripati v. Henman, 843 F.2d 1160, 1163 (9th Cir.1988) (stating that § 2255 was not inadequate or ineffective despite alleged bias of judge in sentencing court)
 
 
 [14]
 We consider only those constitutional arguments that Barrett raises in more than a perfunctory manner. See, e.g., United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir.1997)
 
 
 [15]
 The Supreme Court has commented:
 [O]ur Jencks decision and the Jencks Act were not cast in constitutional terms. They state rules of evidence governing trials before federal tribunals; and we have never extended their principles to state criminal trials. It may be that in some situations, denial of production of a Jencks Act type of a statement might be denial of a Sixth Amendment right. There is, for example, the command of the Sixth Amendment that criminal defendants have compulsory process to obtain witnesses for their defense.... [A]part from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten ... that the proceeding is more a spectacle or trial by ordeal than a disciplined contest.
 United States v. Augenblick, 393 U.S. 348, 356, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) (citations omitted); see also United States v. Valenzuela-Bernal, 458 U.S. 858, 872, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Barrett's discussion of how his particular Jencks Act claim implicates such constitutional rights is essentially undeveloped.
 
 
 [16]
 Although Barrett cited the Suspension Clause as a basis for jurisdiction in his petition to the district court, he has made no developed argument to us that the Clause provides any independent basis for jurisdiction. We concluded above that the § 2255 savings clause makes § 2241 available in some circumstances. Therefore, we do not address "the question of whether the Constitution's Suspension Clause alone, unaided by statute, provides jurisdiction and the equally vexing issue of what kinds of claims are permitted under such novel jurisdiction." Goncalves v. Reno, 144 F.3d 110, 123 (1st Cir.1998), cert. denied, --- U.S. ----, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999)
 
 
 [17]
 Barrett's brief discussion of the All Writs Act mentions specifically only the writ of error coram nobis, which is the writ typically sought by petitioners in situations analogous to Barrett's. We therefore do not consider the applicability of the writ of audita querela, a point that was briefed by the government. We note, however, that our holding that the All Writs Act does not apply here does not turn on the nature of the writ sought under the Act
 
 
 [18]
 The same rationale also makes inappropriate any use of our "inherent power" or "supervisory power" to circumvent Congress's restrictions. See Carlisle, 517 U.S. at 425-28, 116 S.Ct. 1460; Bank of Nova Scotia v. United States, 487 U.S. 250, 254-55, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("We now hold that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)."); Thomas v. Arn, 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("Even a sensible and efficient use of the supervisory power ... is invalid if it conflicts with ... statutory provisions."). Although Barrett asserts in passing, without analysis, that Article III, § 1 of the Constitution forbids congressional restriction in this context, we consider the argument waived. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir.1997). In any event, we note that Justice Souter's concurrence in Carlisle, which is Barrett's only support for his assertion, does not suggest so broad a rule. See Carlisle, 517 U.S. at 434, 116 S.Ct. 1460 (Souter, J., concurring) (concluding that "it is not seriously contended that [the rule applied to block the entry of a judgment of acquittal] is an unconstitutional interference with the court's inherent authority")
 
 
 [19]
 Barrett also asserts that the All Writs Act is particularly appropriate in this case because it is the means that would make possible review of the Jencks Act claim "as if on direct appeal." Barrett asserts entitlement to such review on the ground that government misconduct denied him his right to present the Jencks Act claim for appellate review in the first instance. However, the way in which Barrett's claim would be reviewed if his petition were allowed to proceed is not the question we face here. The question is whether § 2255--under which, as Barrett himself points out, similar relief is available in certain situations, see Pratt, 129 F.3d at 59-60 (stating that "a prisoner who files a section 2255 petition in which he alleges that his attorney failed to perfect a direct appeal must be treated like any other appellant appealing for the first time" (internal quotation marks omitted))--is the provision that occupies the field under the circumstances of this case. We note that claims of suppression of evidence through government misconduct, which are contemplated by § 2255 itself, see 28 U.S.C. 2255 (tolling the statute of limitations where delay was due to an "impediment .... created by governmental action in violation of the Constitution or laws of the United States"), are routinely considered under that provision, see, e.g., McCleskey, 499 U.S. at 498-500, 111 S.Ct. 1454; In re Waldrop, 105 F.3d 1337, 1338 (11th Cir.1997); United States v. Zorilla, 924 F.Supp. 560, 564 (S.D.N.Y.1996)
 
 
 [20]
 Even assuming that § 2255 were not controlling here, Barrett does not appear to meet the requirements for issuance of a writ of error coram nobis. "[T]he writ of coram nobis is an unusual legal animal that courts will use to set aside a criminal judgment of conviction only 'under circumstances compelling such action to achieve justice.' Those circumstances include an explanation of why a coram nobis petitioner did not earlier seek relief from the judgment; a showing that the petitioner continues to suffer significant collateral consequences from the judgment; and a demonstration that an error of 'the most fundamental character' ... occurred." Hager v. United States, 993 F.2d 4, 5 (1st Cir.1993) (citations omitted) (quoting Morgan, 346 U.S. at 511-12, 74 S.Ct. 247); see also United States v. Michaud, 925 F.2d 37, 39 (1st Cir.1991). For reasons that we have already discussed, Barrett is unable to satisfactorily explain why he did not raise his Jencks Act claim in his first § 2255 petition. Cf. Barnickel v. United States, 113 F.3d 704, 706 (7th Cir.1997); United States v. Swindall, 107 F.3d 831, 836 n. 7 (11th Cir.1997) (per curiam); United States v. Camacho-Bordes, 94 F.3d 1168, 1172-73 (8th Cir.1996); United States v. Hedman, 655 F.2d 813, 814-15 (7th Cir.1981)